[No. 13505-8-I.   Division One.   February 3, 1986.]

WILLIAM HABERMAN, SR., ET AL, *Respondents,* v.
CONRAD ELLEDGE, ET AL, *Appellants.*

---

*R. M. Oswald,* for appellants.

*C. Robert Collins,* for respondents.

SWANSON, J.—Conrad Elledge, the defendant below, appeals a judgment and lien foreclosure decree entered in favor of the plaintiffs below, William Haberman, Sr., and William Haberman, Jr., father and son, d/b/a B & J Water Well Drilling, following a dispute over a well drilling contract. Elledge contends that the Habermans' failure to comply with a WAC regulation construing RCW 18.104, the Washington Water Well Construction Act (Act), bars recovery on the underlying drilling contract as a matter of law. We conclude that the contract was valid and enforceable and affirm the judgment.

We note initially that Elledge has not submitted a verbatim transcript of the record below; nor has he assigned error to any of the trial court's findings. The findings are

therefore verities and binding on appeal. *Morris v. Woodside,* 101 Wn.2d 812, 815, 682 P.2d 905 (1984). Consequently, our review is limited to determining whether the findings support the trial court's conclusions of law and judgment. *Washington State Bar Ass'n v. Great Western Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 53, 586 P.2d 870 (1978).

In late July 1981, the Habermans, d/b/a B & J Water Well Drilling, entered into an oral agreement with Conrad Elledge to drill a water well on Elledge's property in Snohomish County. The Habermans did not guarantee the existence, quality, or quantity of water, nor did the parties agree how deep the well was to be drilled. Almost all of the work was performed by William Haberman, Jr., who we assume is not licensed within the meaning of the water well construction act.[1] William Haberman, Sr., who is licensed, was present at the jobsite "occasionally," but was not present on the site at all times that water well construction equipment was being operated. The trial court found that he provided "some supervision" to his son.

Apparently, some water was reached at a depth of approximately 65 feet, but Elledge was not satisfied and "fully and freely participated" in a decision to go forward to a deeper level. The court found that Elledge assumed the risk that continued drilling might prevent any return to the 65-foot level. The Habermans hit salt water at 175 feet and hard rock at 202 feet. Such difficulties were within the expectations of the parties, and the trial court determined that the Habermans not unreasonably sought payment and renegotiation of the agreement at this point. Elledge refused to pay, and the Habermans ceased work and filed a lien on the property pursuant to RCW 60.04.010.

On the basis of its findings, the court concluded that the Habermans' violation of an administrative regulation defin-

---

[1]The findings of fact are silent on the question of whether Haberman, Jr., was properly licensed. However, it is apparent that the trial court's decision assumes that he is not so licensed.

ing "supervision" did not bar recovery on the contract. After denying all of Elledge's counterclaims and affirmative defenses, the court concluded that Haberman, Sr., had supervised Haberman, Jr., within the meaning of the water well construction act, and that Haberman, Jr., was therefore exempt from the licensing provision. The court entered a judgment of $2,620 plus attorneys' fees in favor of the Habermans and ordered foreclosure of the lien.

Elledge's primary contention on appeal is that the Habermans' failure to comply precisely with a WAC regulation construing RCW 18.104 is an absolute bar to the maintenance of a cause of action on the well drilling contract, even though Elledge suffered no harm as a result of the violation.

Chapter 18.104 of the Revised Code of Washington, enacted in 1971 and known as the Washington Water Well Construction Act, provides:

> Except as provided in RCW 18.104.180, no person may contract to engage in the construction of a water well and no person may act as an operator without first obtaining a license by applying to the department [Department of Ecology].

RCW 18.104.070. The provision at issue in this appeal exempts from the license requirement:

> Any individual who performs labor or services for a water well contractor in connection with the drilling of a well *at the direction and under the supervision and control* of a licensed operator.

(Italics ours.) RCW 18.104.180(2).

Pursuant to authority in the Act "[t]o make such rules and regulations . . . as may be appropriate to carry out the purposes of this chapter", RCW 18.104.040(4), the Department of Ecology in 1973 adopted the following definition:

> (8) "Supervision" or "supervising" means *being present at the site* of well construction and responsible for proper construction *at any and all times that water well construction equipment is being operated.*

(Italics ours.) WAC 173–162–030(8).[2]

The trial court found that Haberman, Sr., provided "some supervision," although he was not present at the drilling site at "any and all times" that equipment was being operated. The findings contain no indication of improper or incompetent construction techniques and show that the Habermans performed in accordance with the agreement. On the basis of these findings, the trial court concluded:

> 1. Plaintiffs' failure to comply with . . . WAC 173–162–030(8) ["supervision" definition] does not bar recovery under the facts of this case since this failure was NOT the proximate cause of any damages to defendant.
> 1.1 Plaintiff William Jefferey Haberman Jr. was exempt under R.C.W. 18.104.050 and thus did not need a well drilling license.
> 1.2 Plaintiff William Jefferey Haberman Sr. supervised Plaintiff William Jefferey Haberman Jr. within the meaning of R.C.W. 18.104.050 [should be 18.104.180(2)].

■ Although the trial court's decision does not rest entirely on the theory of "substantial compliance," that appears to be primary basis of its decision. *See, e.g., Northwest Cascade Constr., Inc. v. Custom Component Structures, Inc.,* 83 Wn.2d 453, 519 P.2d 1 (1974); *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 486 P.2d 1080 (1971). We prefer to base our decision on the theory that the violation of a statutory provision by one who has entered into a valid agreement during the performance of such an agreement does not automatically bar enforcement. A correct judgment will not be reversed when it can be sustained on any theory, even though different from the one relied upon by the trial court. *Ertman v. Olympia,* 95 Wn.2d 105, 108, 621 P.2d 724 (1980); *Cheney v. Mountlake Terrace,* 87 Wn.2d 338, 347, 552 P.2d 184 (1976); *Thompson v. Thompson,* 82 Wn.2d 352, 355, 510 P.2d 827 (1973).

Elledge asserts that the Habermans' failure to comply

---

[2]The validity of WAC 173–162–030(8) was not disputed below, nor is it an issue on appeal.

with the literal language of WAC 173–162–030(8) renders the underlying well drilling contract void and unenforceable. These contentions rest upon a misapplication of a long line of decisions in this state declining to grant recovery to *unlicensed* persons under a contract when an occupation license is required. *See, e.g., Lund v. Bruflat,* 159 Wash. 89, 292 P. 112 (1930) (plumbers); *Sherwood v. Wise,* 132 Wash. 295, 232 P. 309, 42 A.L.R. 1219 (1925) (architects); *Springer v. Rosauer,* 31 Wn. App. 418, 641 P.2d 1216 (1982) (real estate broker); *Kilthau v. Covelli,* 17 Wn. App. 460, 563 P.2d 1305 (1977) (commission merchant); *Suburban Fuel Co. v. Lamoreaux,* 4 Wn. App. 179, 480 P.2d 216 (1971) (unregistered contractor).

A contract that is contrary to the terms and policy of a statute is illegal and unenforceable. *Springer,* at 424. Enforcement has been declined even though the unlicensed party has performed the contract to the full satisfaction of the other party. *See, e.g., Stewart v. Hammond,* 78 Wn.2d 216, 220, 471 P.2d 90 (1970) (overriding public policy must not be defeated by attempt to accommodate one who has violated statutory provisions, albeit unwittingly). Equitable grounds such as quantum meruit, quasi–contract, and unjust enrichment are inapplicable in such circumstances. *Springer.*

■ In this case, however, unlike those decisions denying enforcement, Elledge clearly entered into a valid agreement with Haberman, Sr., a licensed contractor.[3] Neither the contract itself nor its performance necessarily contemplated an illegal act.

Courts in this state have distinguished between a valid contract performed in a manner that violates a statutory regulation and contracts made in contravention of specific statutory requirements or declarations of policy. *See, e.g., Allison v. Medicab Int'l, Inc.,* 92 Wn.2d 199, 203, 597 P.2d 380 (1979); *Fleetham v. Schneekloth,* 52 Wn.2d 176, 180–

---

[3]Licensed water well contractors are exempt from the contractor registration requirements of RCW 18.27. RCW 18.104.070.

81, 324 P.2d 429 (1958); *Way v. Pacific Lumber & Timber Co.*, 74 Wash. 332, 334, 133 P. 595 (1913); *Stegall v. Kynaston*, 26 Wn. App. 731, 734-35, 613 P.2d 1214 (1980). We are therefore not being asked to endorse a contract that is illegal and void ab initio. *See Ogilvy v. Peck*, 200 Wash. 122, 93 P.2d 289 (1939) (enforcing contract and distinguishing situation in which licensed plumber failed to obtain permit required by city ordinance from situation of illegal contract with unlicensed plumber).

In addition, a contract that "violates a statutory regulation of business is not void unless made so by the terms of the act." *Ritter v. Shotwell*, 63 Wn.2d 601, 606, 388 P.2d 527 (1964); *Hennessy v. Vanderhoef*, 1 Wn. App. 257, 262, 461 P.2d 581 (1969). The water well construction act contains no such provision. Nor does the Act contain a provision similar to RCW 18.27.080 of the contractors registration act, which conditions maintenance of an action on proof that one was duly registered at the time of entering into a contract. When a statute imposes a penalty for failure to comply with statutory requirements, "the penalty so provided is exclusive of any other; at least, no other penalty will be implied." *Stegall*, at 735 (quoting *La France Fire Engine Co. v. Mt. Vernon*, 9 Wash. 142, 143, 37 P. 287, 38 P. 80 (1894)). RCW 18.104.160 provides that anyone who violates the provisions of the statute is guilty of a misdemeanor. We therefore find that the well drilling contract was valid and enforceable.

In addition to the penalties of fine and imprisonment, the water well construction act also provides that these remedies are cumulative and do not foreclose "alternative actions at common law or in equity or under statutory law, civil or criminal." RCW 18.104.170. Elledge in fact pursued such additional remedies by way of his answer to the Habermans' suit, but the trial court rejected all of his counterclaims. If the defendant is to assert that any damages flowed from the violation of the WAC regulation, he bears the burden of proving such claims. Elledge's failure to sustain his burden of proof is not challenged.

The judgment is affirmed.

WEBSTER, J., and PETRIE, J. Pro Tem., concur.